Thank you, Your Honor. May it please the Court, first thing I'd like to do is thank you for the privilege of presenting this taxpayer's argument today. And I'd like to begin this morning's argument by addressing a concession that the Commissioner made on page 6 of their answering brief that was filed in this case. And I do this because I think it considerably narrows the issues that are presented by this case. After seven years, the Commissioner concedes, and I quote, unless additional requirements are met under 9.7 of the partnership, however, the agreement provided that the recipient of the interest would be an unadmitted partnership assinee, citing the record. There is no evidence that the Commissioner ever alleged, argued, or documented any of the caveat reference to 9.7 of the partnership agreement because those additional requirements under 9.7 of the partnership agreement are necessary if the Commissioner has admitted that the Texas partnership law and this partnership agreement conveys an unadmitted assinee partnership interest. And that's exactly what the Texas Business Organization Code specifies for an assignment of a partnership interest and also for the property interest that the recipient of the assignment receives. And under this court's precedent in the Bright case and Adams case, the property transferred is determined under Texas partnership law and or the partnership agreement. You don't dispute that the signature of Elizabeth Straithoff satisfies the partnership agreement in terms of its ability to transfer? It was only that signature? I'm sorry, I... You don't dispute that it is only that signature of Elizabeth Straithoff required to transfer the interest? Is that correct? No. Your Honor, the statute is very clear. The recipient of the assignment has to require, has to be admitted as a limited partner. And there's no evidence anywhere in this record that any request was made to be a limited partner. And also I point out that there are absolutely no consents which Texas law requires if an assignee interest becomes a limited partner. And the court, I mean the assignment itself was stipulated as transferring all of the decedent's limited partnership interest. This has been a red herring in this case from the very beginning talking about this is a transfer of all of his limited partnership interest. Well it certainly was. We stipulated that. And neither the government nor the taxpayer could change that in any way. And not only was it stipulated, but there were no pleadings ever filed by the government raising an issue under 9.7 of the partnership agreement saying that somebody had made a request to become a limited partner. What the government has argued all along and it's totally erroneous is that the assignment standing alone creates the limited partner interest. And I point to the court, to the briefs in the tax court and that we have filed in this case, they do not cite one single case that says the assignment by itself creates a limited partner interest. And that's because Texas partnership law under the Texas Business Organization Code says that an assignment of a partnership interest does not create a limited partner interest. It creates an unadmitted assignee interest. And this court's precedent that I've cited before sustains that the property interest transferred is determined under Texas partnership law and it's not the piece of property that the transferee assigned or that the, in this case, the decedent assigned. It's what was the property interest under Texas partnership law that the assignee received. And in this case, the government has now in that admission or that concession, they've said that under the Texas law and under the partnership agreement, except for 9.7, it conveyed an unadmitted assignee interest. And this becomes very important when you consider the fact that there's no allegation anywhere in this record that there are any documents or instruments that have been executed by anybody agreeing to become a limited partner. And that's a requirement under Texas law. If the assignee wants to become a limited partner, and under our partnership agreement, he would have to ask the general partner to be admitted as a limited partner and they'd have to prepare the documents and then they'd have to sign off on everything. And the important thing is that the recipient of the assignment would have to agree to all the obligations of the limited partnership. And there's no documents in this record that show anybody even considered that. Now, I mentioned very lightly that there were no consents in this record for anybody becoming a limited partner. That's not just a casual reference. That is foundational under Texas partnership law for any recipient of a partnership interest to becoming a limited partner. He's got to request it. It just doesn't automatically happen. And as I mentioned, that's the red herring that the government's been promoting all along in this case. They're saying, well, the assignment conveyed a limited partnership interest. I submit to this court that that is not possible under Texas partnership law and certainly not possible under the partnership agreement in this case. Now, I raise this concession because the concession itself affects the commissioner's statutory notice in this case. The statutory notice computed the deficiency that was due. The commissioner's expert witness testified that she only valued a limited partnership interest. But if the government is now conceding that under Texas partnership law and the partnership agreement there was an unadmitted assignee interest, then absent the qualifications under 9.7 making clear that the assignee requested to become a limited partner, then the notice of deficiency, the amount of deficiency determined, is wrong because on cross-examination, the government's expert admitted that she never even considered an assignee interest in valuing the limited partner interest. And further on cross-examination, she admitted that had she known about the unadmitted assignee interest, it would have affected her evaluation because under the willing buyer and willing seller fair market value computation, she testified that a willing buyer would want to know about that outstanding assignment and that it would in fact affect her valuation for lack of control. Go back to the notice of deficiency issue that you raised and I think you just made reference to it. Yes, sir. What is the best case that you can cite to us that supports your position that the notice of deficiency must be more specific than simply the amount? Your Honor, that is section 7522A of the Internal Revenue Code. When section 12 of the APA was amended, part of that amendment put the APA into the United States Code and section, I think it's section 5, I'm sorry, it eludes me right now, but I've cited it in my brief. What I'm looking for in particular is a Fifth Circuit case or any other circuit or Supreme Court case that identifies the specificity that the IRS notice must contain in a way that supports your argument. Your Honor, there's an extensive part of my brief that discusses that whole issue. I read it. What I'm looking for is what you think is the best case that we should look at that supports the argument. The Supreme Court cases that have confirmed that when there is a final agency decision and the statute did not provide that the APA would not apply, the Supreme Court has said, in cases I've cited in my brief, the Supreme Court has said that the... You're applying the Chenery Doctrine. Sir? The Chenery Doctrine. The Chenery Doctrine. That's a different... That's part of it. But what I'm referring to goes beyond just the Chenery Doctrine because the court... the legislation says that unless a subsequent statute was exempted from the APA, then the APA applies. And the government's argument here is that under 7522A, that if they don't put in a statement for the basis on which the tax was authorized by the commissioner, that it doesn't affect the notice. But because of the APA amendment and the fact that when they passed 7522A, they did not put in there that it was exempt from the APA. And that's been the test in the Supreme Court cases that I've cited in my brief on this issue. All right. Thank you, Mr. Chamberlain. We have your opening argument. You've reserved your rebuttal time. We'll hear from the commissioner's office at this time. Thank you, Your Honor. Thank you. Thank you, Your Honors, and may it please the court. Julie Avetta for the commissioner. I would like to respond first to the contention that the government has conceded that what was conveyed by the partnership agreement and the document-styled assignment of interest was anything other than a full, limited partnership interest. We do not concede anything of the sort. To the contrary, we maintain that the agreement or the assignment of interest document, which I will refer to as the agreement... I don't want to interrupt you, but you're like me. You have a nice, soft voice, and you're speaking kind of conversationally to us, but try to just speak into it a little. I think counsel's having a little trouble hearing you. I beg your pardon, Your Honor. All right, no worries. I've asked her to speak up a little bit so you'll be able to hear. I can't hear a word she's saying. All right. I'm sorry if I made that mistake. No, it's not that. We'll cure it. We've got it. The assignment document purported to convey all of Frank's interest in the limited partnership. Texas law does indeed establish that an assignment agreement presumptively creates an assignee interest in the grantee. Do you consider this a question of fact or a question of law when the tax court makes that determination? When the tax court is interpreting the agreement, Your Honor, it is making findings of fact. If it is construing terms, it is reaching conclusions of law. Here, it's going down the checklist and making sure that the conditions of the conveyance were met as described by the partnership. That is a factual finding. You're looking for signatures. You're looking for signatures that agree to terms. You're not construing those terms. And here, as Your Honor, in fact, noted, those signatures were in evidence. And the provisions of the agreement... Now, Texas law says we establish the default conditions, but the terms of the partnership agreement control. By those terms, the interest that was conveyed in the assignment agreement was a full limited partnership interest. Section 9.7 of the partnership agreement on page 441 of the record sets three requirements for a transfer of a limited partnership interest. The general partner must consent, and that is evident in the record. The assignment must be a permitted transfer, which is also in the record, was stipulated, in fact. And the recipient of the conveyance must execute all of the documents required by the general partner to confirm that they are agreeing to be bound by the partnership agreement. And again, that is in the record here. We have three signatures, which coincidentally happen to be one signature three times. It's one person on all sides of this transaction. There's plainly a consent to the transfer, but is that the same as consenting to the admission of a partner? The tax court did not distinguish between the two, and Texas law... No, they didn't. That's why I'm asking the question. Texas law requires no distinction. I think that's the actual red herring that's been presented here this morning. Texas law sets your default condition and says you're going to convey an assignee interest unless the partnership agreement, the governing document of the entity, sets other conditions. And when it does, then you look to the agreement and it's binding as a contract is binding. And that is what the tax court did here. And that, perhaps to Judge Englehart's question, is more of a question of law, because you're saying, did this... If we're reading this as a contract, did the four corners of this document meet these requirements? But we submit that the estate has not shown error in the tax court's conclusions that it does, because the signature of the general partner here is expressly as approved by. Like, I'm approving what this agreement provides for. And the language of the agreement is expansively drawn. If you look at... The terms of it are on page 478 of the record, and it conveys all right, title, and interest, all rights and appurtenances thereto. It's drawn almost like a warranty deed. It's binding on heirs and assigns. It does not limit what is conveyed in any meaningful sense. There is no indication that what it is conveying is a non-voting interest, is impaired in any way from the rights of a full limited partner. There is no lack of control baked in that cake. What's being conveyed is everything that Frank had. And while Texas law might say, even if you're doing that, Texas law, in the absence of other provisions, will only call that an assignee interest, here we have those other provisions, and those other provisions on the face of the partnership agreement were met. That is why the limited partnership interest was conveyed unimpaired, that there was not an assignee interest in the revocable trust. To the extent that there may be a factual dispute, I know there were a lot of stipulations in this case before it was submitted. To the extent that there is any factual dispute, who would have the burden? Would that be the commissioner's burden to support the deficiency claim, or is it the taxpayer's burden to counteract the deficiency notice? That is a question of law that the tax court resolved on several motions in favor of the commissioner and held that the taxpayer, the estate here, had that burden. And they've shown no error in those conclusions on appeal. So we submit that, were there any facts remaining in dispute, those would be the estate's burden to demonstrate. The determination of the commissioner comes with a presumption of correctness. Although on that point, I wish to pivot to the second argument about the sufficiency of the notice. Before you do that, let me come back to the first condition. The general partner must, quote, consent to such admission, which consent may be granted or withheld in the sole and absolute discretion of each general partner. Now, there's no question but that the limited partners' general partnership through Ms. Stregoff approved the transfer. But the... I go back to my question that that approves a transfer, but the first condition is that they consent to make a partner. And while I think the government may have a stronger argument with regard to the substance of a form, Doctor, and I really have trouble with your argument that you derive from the actual transferred language itself. If I may, I will respond to that in two parts. First, the form issue is resolved by looking to the language of what is being conveyed in that assignment of interest. It is not a non-voting interest. It is not made clear that what the partnership is conveying to the trust is anything other than everything that Frank had in the partnership. And that is what Elizabeth is consenting to as the general partner of the corporation. Will you make a legal determination that that transfer was a consent? I beg your pardon? You're making a legal determination that the transfer was a consent? The consent consists in the terms of what is transferred and the approval thereof. Two parts. The language of the agreement and the signature. If the general partner did not wish to consent to a full conveyance or wished to convey... You would say that rather than requiring an affirmative demonstration of consent by the trust, you would require that they disclaim that... Not precisely, Your Honor. First of all, it's the general partner who is consenting to the grant, and then the trust is agreeing to be bound by the partnership as the recipient, the partnership agreement as the recipient of the grant. The general partner has the authority to draft that agreement or to suggest any changes to that agreement that they're not willing to consent to. The agreement is on its face between the limited partner and the trust, but the general partner gets a vote and indeed is required to sign for that to happen, even at lesser conveyance. So what you've got here is oversight by the general partner, and if the general partner is displeased with the admission of the grantee to the partnership, the time to say so is when you are approving a conveyance of a wholesale interest without any markdowns for lack of oversight, lack of voting rights, or other aspects of control that presumably... You're transferring all your... You're transferring all your assets there, but then the voting control is controlled by separate language. And so you transfer all the assets, but you're collapsing the transfer of the assets and the transfer of the voting incident to that. And you're wrapping that in the language because of, like you say, a warranty date, the voting rights, whatever. But I have trouble with the language that says that they have to consent to it, like the general partner. The consequences here are quite large, to say the least, and it strikes me as being rather awkward to read this instrument to say that they were actually offhandedly, or secondly, transferring the instrument trying to create a limited partnership because they could have transferred all their property interest, the equity interest, and so on and so forth there quite plainly, and only an S&E interest, a self-not-limited partnership. You agree they could have done that? A different agreement would certainly have accomplished that. I understand they could have done that by agreement, but my question to you is that I have difficulty in saying why they didn't accomplish that because of the agreement that there has to be consent to it, and you're inferring consent to the creation of the partnership, an inference. That's an interpretation of law, I suppose. Are you calling the question a fact? Respectfully, Your Honor, the general partner signed under a caption, approved by, and the approval and consent are terms used interchangeably in the partnership agreement. If the language of approved by does not imply consent, that's a hair-splitting exercise that the tax court did not engage in and no one urged it to. Neither party took the position that approved by was not language of consent in the tax court, and we would submit that the tax court did not err in treating those terms as synonymous. We would also submit that if the court is troubled by the tax court's reading of the formal effect of the assignment agreement, the substance of what was conveyed is entirely consistent with the transfer of a complete limited partnership interest. There were no carve-outs for voting rights in the assignment document. The tax court concluded that the voting rights that Frank possessed were conveyed, along with all of his rights, to the grantee of that instrument. As I understand it, did your expert value the interest that was transferred to the trust independently? In other words, did the expert independently go in and try to value whether... Well, let me back up a little bit. Did the expert look at the interest that was transferred to the trust and independently determine that it was a limited partnership interest? She did, Your Honor, and she did so because Article V of the trust made clear that an aggregation, or in this case a single limited partner, owning more than 75% of the partnership had the right to dismiss the general partner at any time, which would dissolve the trust. And because what was conveyed in the assignment document was 88.99% of the interest, she said this effectively is a person who has control over the entire trust. So I see no basis to apply a lack of control discount since you can dissolve the partnership by fiat. We also note that the trust was revocable, and Frank could have revoked it at any time during his life, withdrawn all of the assets from it, decided that he wanted to step back into the shoes of what he had conveyed away, and all he would need to do is make that choice. He could revoke the trust, the interest, and everything else contained in that trust would revert to him personally, and his voting rights, such as had ever been conveyed away, would be restored. The tax court noted, and this court has affirmed its reasoning in a similar case, that the only real distinction between an assignee and a limited partner is voting rights, and that that's not a meaningful distinction in a case where votes are not held on meaningful matters in a partnership. Here, no votes were ever held. And we also note, as stated earlier, that one person represented every party to that agreement, the grantor, the grantee, and the consenting general partner. There was no lack of information. There was nothing held back. There could be no misunderstanding between a person in three different capacities. Let me ask you... I know you're going to move to the deficiency question before you run out of time. Among the many arguments made by counsel opposite seems to be not factual disputes, you know, made in the tax court, but his silver bullet argument, so to speak, is that the Texas law, the Texas partnership law, was misapprehended by the tax court and the commissioner's position here. So as I hear it, among other things, is this overarching government's position is totally inapposite to what the Texas partnership law provides, et cetera, et cetera. So can you help me out just kind of... Because I'm sure when he comes back up, he's coming back there, and then you shift to the deficiency. Texas partnership law does not require any separate documentation for an assignee to request admission to a limited partnership. Texas law establishes the threshold conditions that govern a partnership in the absent of contrary terms in the partnership agreement. Once you've got terms in a partnership agreement, those control, and those are a contract binding on the parties, and Texas law has so helped. Texas law also provides that broadly drawn documents conveying all rights and appurtenances to an item of property include inchoate rights, such as voting rights that are never exercised. So there is no inconsistency here with Texas partnership law where an agreement was executed to convey an interest in a partnership from a limited partner to a third party, which then complied on its face, as the tax court held, with the three criteria for admission to the partnership established by the partnership agreement. Once those three boxes were checked, Texas law is satisfied, because Texas law says look to the terms of the agreement, and Texas law requires nothing more. All right. I shift to the deficiency while you have some time. Thank you. Thank you. We note that the framing of the issue by the estate was quite simply if the interest that was transferred to the revocable trust was an assignee interest, then the notice of deficiency is wrong. That's why you have the deficiency proceeding in the tax court. When you believe a notice of deficiency has reached a wrong number, you have a de novo proceeding to redetermine that deficiency. And indeed, the outcome here was a different number. Other things had happened in between. There were credits that were applied. But the notice of deficiency is not a final determination. It's an initial determination. It's your ticket into tax court. And a notice of deficiency that's wrong is why you go to tax court. It is not an invalid or insufficient notice under 7522 of the Internal Revenue Code. The code, in fact, says that even if your notice of deficiency doesn't adequately explain the basis for the deficiency or gets the amount due wrong, that won't invalidate the notice. You can still go to tax court. You can still litigate that deficiency before a trier of fact in a de novo proceeding that results in a judgment, which is then reviewable in the court of appeals where we are now. And the Administrative Procedure Act does not displace that. Those procedures were in place before the APA. They survived the enactment of the APA. The APA judicial review is only available when there is no adequate remedy at law. And that existing, well-articulated, complex statutory governing framework existed already,  for that reason, you have a clear, functioning, adequate remedy at law, and because the APA does not displace those, there is no need to make allowances for the APA when amendments are made to clarify any ambiguities in that existing, functioning statutory proceeding... set of procedures, set of statutory provisions. I see my time is running out. If the court has no further questions, we ask that you affirm. All right, thank you. Appreciate it. All right, we're back to you, Mr Chamberlain, for a rebuttal. Thank you, sir. Careful. I'm sorry. All right, be careful. Take your time. Your Honor, the government's whole argument about Mrs Stradolph approved anything collapses when you look at what she's talking about. She's talking about the property that was conveyed from Frank Stradolph to his revocable trust. We stipulated that it was an authorized transfer, and under the partnership agreement, she had to approve the assignment to the revocable trust. The thing the government refuses to recognize here is that the property received by the revocable trust under Texas partnership law was nothing except an unadmitted assignee interest, and the government has not cited one case in the tax court or in their brief before this court that says an assignment conveys a limited partnership interest to the recipient of the assignment. There is no such case, and they keep harping on this, and it's disingenuous to argue that Mrs Stradolph's approval of the assignment from Frank Stradolph to his revocable trust was approval for him to become a limited partner. I mean, it has no foundation in law or fact. And, Your Honor, on your earlier questions, it was the Zirko case, Dickinson v. Zirko. If you'd look on my reply brief, it's on pages 13, 14, and 15. It's discussed in great detail. And as late as 2015, the chief judge of the Supreme Court reaffirmed this principle in the Michigan v. EPA case. It's Section 5 U.S. Code 559 is where the limitation is, and the chief judge reaffirmed that requirement that the statute passed has to say APA doesn't apply. And he even went so far as to say in that case that we cannot allow an exemption which is not authorized by the statute. I mean, that statute is ironclad. In probably the 30 seconds I've got left, I would like to address the Chenery issue. It is almost hornbook law nowadays that when the reviewing court of an agency final decision is based on a ground that was not put forth by the agency, that the Supreme Court says it cannot be sustained. And it's important to recognize here that this just didn't happen by happenstance. I mean, Judge Kerrigan, deciding that there was substance over form, grew out of the fact that she had just been reversed, in my opinion, this is just conjecture, but it's worth considering. Go too far. Pardon? Go too far. Well, all I will say is that the judge never considered our arguments in the court below, and I base that on the fact that throughout the briefs filed in the tax court, the taxpayer admonished the court about precedent, controlling precedent for not only the Chenery issue, but for the partnership issues. And when you got down to the valuation, we have pointed out that the commissioner's valuation case has totally collapsed. I mean, his expert has testified that she never even considered the unadmitted assignee interest. The red light's on, Mr. Chamberlain. Your red light's on. I'll give you a concluding sentence. Oh, I'm sorry. That's all right. Give us a concluding sentence. I'll let you make a concluding sentence. Your Honor, we have presented an ironclad case to reverse the tax court based on existing precedent in the Supreme Court and the United States Court of Appeals for the Fifth Circuit, in my opinion. All right. Thank you, Your Honor. Thank you, sir. Thank you, Mr. Chamberlain. Thank you, Ms. Avena. Very interesting case, to say the least. Not what we get every day, so we will be hard studying it to figure it out. Before we call the third case up, counsel can come on up to the rail. The panel's going to take a real short five-minute break, and we'll be right back.